Mr. Joyce, whenever you're ready. Good morning. May it please the court. I'm Raymond Jones. I'm the White Oak. The plan's petition for confirmation facially presented no federal question. Parties are non-diverse. Thus, under Badger Road, the District Court erred in finding it had federal jurisdiction. The District Court's holding that confirmation of arbitral awards involving ERISA necessarily present federal questions rests on just another version of look-through. Well, no, it isn't, right? I mean, it clearly isn't. You say this would eat the no look-through rule. But as I read the District Court's opinion, it applies only to the exceedingly vanishingly few situations in which there is total preemption as opposed to the other kinds of preemption. I'm not sure about that, Judge Lynch. Total preemption, complete preemption, arises from 1132A1B, a.k.a. Section 502 of ERISA. The District Court never cites that provision anywhere in its opinion. Well, how about if we cite it? Explain to me why that would be incorrect. So, let me start with, I think that's foreclosed by Badger Road, by Hirsch. No, Hirsch, you totally over-read Hirsch. And first of all, it's not binding us in a circuit case. So, that's nice. It's not binding. But it is not a case that says it's always state law. It's a case that says it's either state law or federal law, depending on what kind of ERISA case it is and what the situation is. And it goes on to say this arbitration agreement is not in any of the ERISA documents. It is in the employment contract, and that's why it's state law. I apologize, Your Honor. I think you misunderstood my response there. What I was talking about was that you had an accedent point that we made that in Badger Road, Hirsch, in Judge Jacobs' concurrence in Bissonette, the ground for preemption needs to appear on the face of the petition. It needs to be pleaded. Here it wasn't pleaded. It's never argued in the briefs. They never argue that it's a complete preemption. Yeah, well, of course. Neither did anyone argue, excuse me, can I ask a question before you answer it? Is that okay? Absolutely, Judge Lynch. Neither did anyone argue this because it wasn't a thing until Badger Road. Now, that's fine. You didn't waive anything because this is a jurisdictional issue and you can raise it at the last minute after the entire case has been litigated. That's fine. But I think it lies a little bit ill in the mouth to then say, oh, the other side needed to have pledged this at a time when no one thought there was anything other than look-through at issue. We're looking at substantively is there federal jurisdiction here or is there not? And again, Judge Lynch, on the last point, I meant their brief here. They do not cite 1132A1B. They go to where Judge Kaplan went on A1C. That's not where all these complete preemption cases come from. It's through A1B. And Davila and Wurtz, the question is asked, is the cause of action, does it fit? Davila is quite clear about this on pages 208 and 209. The ERISA complete preemption provisions don't expand remedies. They say here's what your remedy is. When state law is preempted, here's the cause of action you get, an A1B cause of action that no one here invokes. Judge Kaplan didn't think it fit. My opponents on the other side I don't believe it fit given the way that they briefed this case. And then I think where you are, Your Honor, is you're in the part of Judge Kaplan's opinion that's invoking federal common law. But that doesn't do it either. Because the question when you have a federal common law issue pop up remains, do you have a federal cause of action? And Smith, the case that Judge Kaplan cites, doesn't address that point. Smith is a case about federal common law governing an ERISA plan. Fine. That doesn't answer the question, does a cause of action arise under a federal common law? I'd say the most natural way of understanding whether a federal cause of action arises is here in ERISA purposes is through 1132 A1B. But even if you take Smith, I think it's and I apologize, Your Honors, because this one ends up being outside what we've briefed But there's heavy reliance on that Smith case. I think it's worth reading the Seventh Circuit's follow-on case or related case called East Central Illinois Pipe. And let me give you a, let me find and then give you a citation there. Is, excuse me. As I have misplaced my note. Sorry. 3F4 954 958. Exactly the principle applied in Smith. Says it's an ERISA case seeking to enforce successor liability. Seventh Circuit off the bat says ERISA successor liability is governed by federal common law. And then it says that's not enough. It applies franchise tax. It applies Peacock. And it says you need a cause of action. It says It's not the arbitration clause here. Part of the advisors agreement. The arbitration clause here, yes, is part of the advisors agreement. And is that not considered a plan document? I think that's a harder question. The advisors agreement, yes, is considered a plan document. I think it's actually harder as to the arbitration agreement, given what Rena Center and Buckeye and all these cases say about the severability of arbitration agreements. So I'm not as clear there. But even if it is, I think the point at which you're looking at the arbitration agreement is on the look through side. Because it's not coming up in confirmation. The right to confirmation doesn't arise out of that. The provision, I think it's section 24 of the IMA, doesn't tell you anything about confirmation. It tells you when you can bring essentially a section 4 claim. A claim to federal court. If you have a suit between ERISA fiduciaries about the obligations of fiduciary behavior, and that agreement provides for arbitration, it strikes me that enforcing the arbitration operation becomes a part of that agreement. It would be very strange if it did not, it seems to me. Can you explain why it isn't strange? I don't think it's any stranger than the fact that an ERISA settlement or an ERISA judgment, whether in success or liability or in these cases post-Peacock, doesn't itself create federal jurisdiction. Look, there's a narrow sliver of cases in which it could. The Madison Hotel case that they rely on makes sense, but it's a grable case. And that's where, effectively a grable case. It's a pre-grable case. But the question there is, these ERISA rights haven't been adjudicated. So exactly the issue before the judge on confirmation is, what does ERISA mean? They've got an agreement that parallels ERISA. Here, we don't have anything like that. And so I think this falls in line with Peacock, with the Seventh Circuit case that I mentioned, and otherwise. I've eaten up most of my time on jurisdiction. What do you do with the sentence in Badgero about referring to the rights, the contract rights that are provided in the arbitration agreement? I mean, you say it's just a stray sentence in your briefing, but I don't know that that's good enough for us. How do we read that together? Judge Park, I think what the Supreme Court there is an observation. It's saying why Congress has drawn this line. I do not think it's saying, if there had been federal common law in an agreement, it creates a rising under-jurisdiction, at least not where you don't have a cause of action. And the last thing I'll say on that is, I think whether you're looking at 1132A1B or A1C, as Judge Kaplan went to, neither of these really make sense, given things that we know Congress has done in other settings. Our brief points to FAA Chapter 2. I think it's also useful to look at the Multiplier Pension Amendments Act to ERISA. That is a part of ERISA that says in 29 U.S.C. 1401, upon completion of arbitration proceedings, any party thereto may bring in action in an appropriate U.S. District Court to enforce, vacate, or modify the arbitrator's award. I think it's impossible to find that confirmation jurisdiction was somehow lurking all along in A1B or in A1C, given that backdrop. Even if we agree with you, I guess to Judge Lynch's point earlier, this was all, this all changed after Badgero, and so shouldn't we send it back and give them another chance to refile the petition to confirm? I mean, dismissal would seem inappropriate when everyone is relying reasonably on look-through jurisdiction. I don't think so from a futility standpoint, Your Honor. Look, they had that opportunity. I think they could have amended right in response to Badgero. Instead, there was a new set of briefing. But nowhere in that did they spell out what a federal question would be. Your position is more fundamental than that, isn't it? I mean, you're not really trying to screw them because they didn't put this in the original complaint or an amended complaint. What you're really, your basic position is that wouldn't help because there still would be no federal jurisdiction under your theory. Right. I mean, it's a futility approach, right? I think there's good reason they haven't, I think the path in cases like this is probably a Grable-like path, but there's a good reason they haven't pleaded it. It just doesn't exist on this, on this award. I haven't understood the difference between Grable and this sort of complete preemption issue. Maybe because I've never fully understood Grable, and I don't know that everybody else does either. I will not disagree with Your Honor there, but I think that the most salient distinction that runs through the complete preemption cases and through the cases on jurisdiction to hear a common law claim is, is there a federal cause of action, right? That's what the complete preemption cases are doing. I think that's what, it's a different area of complete preemption, but we cite in our briefs Judge Park's opinion and Solomon for this court. Those complete preemption cases are looking at what the federal cause of action is. I think that's off the table here. Those common law cases in which federal common law is being applied, like that east central Illinois pipe case, are looking, is there a federal claim? Isn't the whole theory, I guess my problem is, isn't the whole theory of Badgerow that enforcing a contract in the ordinary course is a matter of state law and absent diversity, or, and Badgerow is clear, keeps saying generally, typically, precisely to leave open the possibility that there are some contracts that are governed by federal law, and that changes the game. I think that's, my response is similar to the one I gave Judge Park. I think it's making an observation that contracts are generally governed by state law. I don't think it's saying if there's a contract governed by federal law, suddenly this whole area is transformed. Why not? Because what transforms it and what defeats the unanimous judgment of courts of appeals, which the Supreme Court mistakenly thinks it can just ignore, what made that all get upset was precisely the fact that enforcing an contract, and therefore is governed by state law. And that whole theory does not work if the contract itself is not governed by state law. But the parallels it drew, right, or settlement or judgments, and none of those under ERISA have ever been hugely jurisdiction creating. I think that's why Madison Hotel goes, again, pre-Grable, but goes to, is there really a federal question of ERISA presented here? I think it would be a different story, right, if the contract was governed by federal law, and 1132A1B, for instance, created this kind of jurisdictional right. Or, I'll take Judge Kaplan's, if 1132A1C, this equitable provision, envisioned this. I don't think you can get there. That's not what those things are doing. And so I think this decision just ends up being of a kind with those other ERISA cases. I see I'm well over my time, but we haven't spent any time on the merits issues. I don't know if you would like me to address those in light of Judge Lynch's questions about jurisdiction. You've reserved a couple minutes for rebuttal, so we'll hear you and if anything comes up on those other issues. Thank you. Mr. Phillips? Yes, Your Honor, one minute. Good morning, Your Honors. Will Phillips from Covington & Burling on behalf of the Trustees of the State of New York and the state nurses pension plan. The sentence in Badgero that makes the arbitration provision and the law governing it critical is not a stray sentence. Justice Kagan did not include stray words. When she talks about this, as Judge Lynch pointed out, the contracts are typically or generally governed by state law, but there are exceptions and this is one. My adversary is the appellants would have you look at the award, but in fact what you look at is the contract. And that's what Badgero says. The application concerns the contractual rights provided in the arbitration agreement generally governed by state law, but not here. This is a contract between ERISA fiduciaries regarding how to invest ERISA funds, pension funds. I can't think of something that is more squarely within ERISA jurisdiction and federal jurisdiction than this. And 502E in fact says it's exclusively federal jurisdiction on this. The court well knows that congressional intent here was to provide access to the federal courts for claims that came up under ERISA. Yes, but of course the contract here cuts out the federal courts. Does your theory sort of really mean that the arbitration clause shouldn't apply because the enforcement of this agreement is exclusively for the federal courts? No, Your Honor, and in fact I think it all flows together. In fact, Bird, in the Bird case, Bird v. Scherson-Williamson, this court held that the reason that you could have arbitration for under ERISA was because, among other reasons, the federal claims, claims that are clearly brought up under ERISA, are not there to be enforced in federal court. And I would suggest to the court that it will need to reexamine whether the cases that come up under ERISA are in fact arbitrable. Right, because ultimately, ultimately, if Mr. Joyce is correct, then the strange, because the court that reviews the arbitration judgment, among other things, is going to look to whether it is in manifest disregard of law that is exclusively federal. Among other questions, Your Honor, the standard for enforcing this award will be federal law. It will be ERISA law. As I said, I can't imagine a case that comes up more clearly within ERISA jurisdiction than a case that is between two fiduciaries under ERISA regarding the investment of ERISA funds. Maybe I'm misunderstanding your argument or Badgerow, but I understood Badgerow to be saying that the source of federal jurisdiction should be apparent from the face of the petition to confirm the award. So by having this conversation about the plan and the underlying IMA, aren't we doing exactly the kind of look-through analysis that Badgerow... Well, there is an exception to the well-peted complaint rule, which Badgerow is articulating, as Your Honor knows. If this is a matter of fact, it doesn't need to be on the face of the complaint. And there's a host of cases in the Second Circuit and otherwise in the Supreme Court that say exactly that. But in any event, if it does need to be on the face of the petition, and I submit to you it is, if you look at the face of the petition, it raises the fact that there are violations of ERISA and that's how this arises. But if we need to, and we ask the district court to do this, we'll amend. I don't think anyone saw Badgerow coming down. So if there's a problem here with the face of the petition, I would ask you to send it back. We'll amend and it will be there. But what would the amendment be? It would be restyling the complaint as a 502 action? It is a 502 action. This comes up under 502. It's seeking specific performance. But yes, we can put this more on the face of the complaint, Your Honor. But I don't think there's really any contest to this because it is a complete preemption doctrine. It doesn't need to be on the face of the complaint. There's a legion of cases that say precisely that. And again, I can't imagine a case that falls more squarely within ERISA jurisdiction than one between two fiduciaries under ERISA talking about the responsibilities to invest ERISA funds for the nurses' pension plan. Can I ask a couple of questions about the merits? One of the arguments that White Oak makes is that the award is insufficiently specific to be enforced. And suppose we agree with you about jurisdiction. Suppose we agree that there's no fundamental flaw in the arbitrator's work. And then we confirm the award. Now, someone at White Oak then gets out his or her checkbook. What do they put in the amount line? The amount is in the judgment, Your Honor. And the original judgment did not have it. We made a motion for clarification under Rule 60. And it was added. I don't believe there is any mystery about it. Well, that's the amount of the net asset value that needs to be returned. Right. But what about profits, for example? Suppose we confirm that they're supposed to disgorge their profits. Are we to just assume that the profits are zero? Or is there some number that appears anywhere? Mr. Ehman is correct that because White Oak refused to participate in that part of the arbitration, we do not have a number for profits. So what's the consequence of that? So right now there is no number for profits. We are in the midst of post-judgment discovery. If we discover profits, we will come back to the court for amendment of that judgment. Back to the court, not to the arbitrator? Well, that's a good question, Your Honor. I think we would go back to the court, but perhaps it's the arbitrator's fault. Okay, but you just think that's a live question. I mean, I understand the point that they sort of torpedoed what the arbitrator thought was going to happen. But then it seems to me like everybody, including you and including the arbitrator, sort of acquiesced in something else, which was instead of appointing a special master to do an inquest, everybody just brings their experts. And their experts come and litigate it in front of the arbitrator. And then the arbitrator issued what she clearly thought was a final award. She thought this was it. So I'm just having trouble figuring out if there is some uncertain amount of profits. To answer your question, on the state of the record right now, Judge Lynch, there is no amount of profits to be turned over. I also have a question about the attorney's fee award from Judge Kaplan. It seems to me that we are here today arguing, as was argued eventually before Judge Kaplan, a very thorny question of federal jurisdiction, is plainly non-frivolous. There are also aspects of the litigation, maybe not grand ones, that they prevailed upon. And so I'm wondering, is it appropriate, even if one assumes, and I must admit, looking at some of the briefing arguments in this case, that I was sympathetic to Judge Kaplan's position that some of the motions that were made below were frivolous, does that justify an award of attorney's fees for the entire confirmation proceeding? Or should we not send that back to Judge Kaplan for an explanation of, tell us exactly what is frivolous and separate those things out and give attorney's fees for your entire confirmation process? Judge Kaplan looked at the number of motions made that repeated over and over again the identical arguments that he had rejected. The motion, and he found many of them either borderline sanctionable or utterly without merit or entirely without merit. These include motions to quash subpoenas, motions for vacatur, motions for reconsideration and misstatements of the record. This is why he awarded, and I believe that the law gives the deference to the district judge to make that determination if there's finding of it. There's also, Judge Lynch, ERISA itself says that there is attorney's fees to be given for some measure of success. And so I think independent ground for attorney's fees here would be the some measure of success. It's not a win or lose proposition. As long as you show some measure of success, attorney's fees are owed. I see my time is up. I'm more than happy to take any other questions. Before you sit down, I have a question about the prejudgment interest on the NAV. The arbitrator found that there was no breach by White Oak for holding on to the assets after trying to return them. No, that is not correct, Your Honor. The arbitrator very clearly found that there was an obligation, a self-executing obligation to return the assets upon the termination and when the termination became effective in September 2018. The arbitrator went on then to say, yes, but we're not going to penalize them. In other words, we're going to let them keep their fees for managing the money from 2018 to 2021. But there was never any walking back the finding that they had an obligation under ERISA and under the contract to return all the monies as of 2018. And so for that reason, I would submit to you that, and the arbitrator, I think, got this right under her reasoning, that prejudgment interest was owed. Their needs, after all, they had use of our money from that time. And that's the reason prejudgment interest is always paid. For which the profits were returned, right? Well, they made money on it and they were allowed to keep the fees that they earned on it. But nonetheless, there was a breach of ERISA and the contract and that they were obligated to return the money. I get that, but I guess I'm this is not a case where a fiduciary is in possession of something that is returned. Well, there should be some allowance for the fact that you should have had the use of that money, right? Except here, the money was being invested for your benefit and to whatever extent there were profits. And at least White Oak says, and I didn't see any contradiction of that in your briefing, that there were profits for you. And the nurses got that money. They got back sums that had been earned during that period by the investment of their funds. So this is a little different than a case in which you're being compensated for the fact that money was withheld from you, of which you did not get any benefit of the use during the Looking at the arbitrary reward, as you know, there's a barely colorable justification for it. And great deference is to be given to it. It's not double recovery because they kept it, they earned fees on it. She allowed them to keep it and earn fees on it. My client, the trustees, had the right to have the money back to invest it in other And under ERISA, they breached that obligation. Prejudgment interest is awarded to us because they kept money to which they were not entitled and earned fees on managing it. But would it matter, would it matter if hypothetically, and I have no idea how the numbers would play out here, if they invested these or any other objective measure of interest rates or likely profitability. And so you did great on the investing that they did. How were you deprived of the money? We have to have some inquiry into if they earned 6%, could you have earned more than that? Judge, we're in the land of a lot of hypotheticals. The arbitrator considered this and said they have wrongfully obtained funds that they were not entitled to. I'll let them keep their fees for managing it, but I'm going to award prejudgment interest because in violation of ERISA, they kept funds to which they were not entitled. Okay, I understand the argument. Thank you, Mr. Miller. Thank you. Sure. Unless the court wants me to go elsewhere, I'll pick right up with that point. Judge Lynch, if lost profits is ambiguous, the NAV, prejudgment interest part is not. You asked earlier rhetorically, where would I find in this award what the I think what you really do is you look at SPA 49, the arbitrator there is not just talking about fees, should not be penalized for the plan's lack of action. Totally agree. You don't even need to finish the question. I totally agree. Thank you. I totally agree. That's a damages theory. That's not a prejudgment interest theory. If they had said you encumbered our funds, you only made a 6.2 million, we would have made 22 million. They get the money back, but that's not what happened here. They made 6 million and they're taking that 6 million and then they say I want 22 million on top. That's not prejudgment interest. That's a penalty under any definition. I don't know the penalty. I understand your point about the damages theory. I understand the argument why they're not entitled to it. I'm not sure I understand why it's a penalty on you. Penalty is punishment. To whatever extent Mr. Phillips is right that the arbitrator thought that interest was appropriate because of the wrongful withholding in which hypothetically maybe they could have done better or maybe they could have not done better, but it's still you had the use of the money they didn't, therefore there should be interest. That's different than saying you need to be punished for what you did by being deprived of money that you weren't. But I think that goes back to Judge Park's question. They got the 6 million out of it. Then you might talk about prejudgment interest. I see that I'm over my time. The last thing I'd say is I think we agree about a lot of the things as I heard my friend on the other side coming up. Look, they have staked their claim. The only claim for a complete preemption here is not under the path that it usually arises, under A2. It's under A3. Judge Kaplan can't make that part work. This is not equitable relief as ERISA has historically understood it. There's no history of these things coming up as confirmations before equity. I think the FAA is a good signal that this was not a traditional equitable proceeding. Part of the reason that Congress enacted the FAA in 1925 is precisely because there weren't these kind of confirmations out there. And then everything we've been talking about over the last two, three minutes of my rebuttal is anything but equitable. We're talking about a damages regime and awarding profits and what have you. This is just not an equitable proceeding as anyone would understand it. And the last thing I'll say is, Judge Lynch, you asked about- Isn't it an action for disgorgement ultimately? So disgorgement I think is tricky, right? If you look at SEC versus Kocash and you look at these Supreme Court cases, disgorgement isn't purely an equitable remedy. And again, here, what they're saying isn't exactly- I mean, but this is not disgorgement like of fraud profits to various people out there. This is disgorgement by a fiduciary of what the fiduciary allegedly wrongfully withheld. That sounds like it's got equity all over it. What am I missing? Except in the description of it, right? It's because they didn't return the funds, pre-judgment interest should be awarded. That's not a disgorgement remedy. Well, pre-judgment interest though is like a tag on to whatever it is. I mean, maybe it should be tagged on, maybe it shouldn't be tagged on, but that's not what's- that's the tail. That's not the dog. The dog here is what is the- what are they asking when they're asking to confirm this arbitration award? I agree. I think the dog is actually confirmation, right? That's what would have to be equitable. And that has not traditionally been considered equitable under ERISA. And I think it goes back to the multiplier pension- I'm going to butcher that acronym- by Congress separately legislated rather than saying this has always been there through equity. I was starting to say, Your Honor had asked about manifest disregard. I don't think this Court needs to get there in this case. I think the manifest disregard issues are all over the table after Hall Street and what the circuits has done with them. But I think what's really clear under Vaden and Holmes is they don't come up on cross-petition or as counterclaim. And Vaden makes quite clear that the way an issue comes up- I still- so my top line answer is you don't need to get there. My second line answer is no, because I think manifest disregard operates under Section 10. And Badgerow says it's got to be outside Section 10. But I think the further point, Your Honor, about- the question would be posed there. If we were the first filer, the jurisdictional question is presented. And Vaden recognizes that. Vaden has a long footnote saying- rejecting- I think it's the chief in dissent- rejecting the position that this game changes because this federal issue has come into things. Vaden says no, no, no, no, no. What matters is when it comes in. And it has to come in through the first filing. And this happens all the time in our system. You present an issue that you could have come into court on affirmatively, but you're the second one in. And matters and moments count. And there's no basis for considering it here. Thank you, Your Honors. Thank you, counsel. Thank you both. We'll take the case under advisement.